## MILLER v. PERRIS IRRIGATION DIST. et al.

### (Circuit Court, S. D. California. February 21, 1898.)

### No. 752.

1. DE FACTO PUBLIC CORPORATION—COLLATERAL ATTACK ON ORGANIZATION.
   Where a reputed public corporation is acting under the forms of law, unchallenged by the state, the validity of its organization cannot be brought in question by private parties. Neither the nature nor the extent of an illegality in its organization can affect its existence, if it be acting under color of law, and the state makes no complaint.

2. ORGANIZATION OF IRRIGATION DISTRICT — DECREE OF CONFIRMATION — RES JUDICATA.
   Where proceedings are had in the proper court, as provided by Act Cal. March 16, 1889, giving the superior court of the county in which the lands of an irrigation district are situated power to determine the legality and validity of each and all the proceedings for the organization of such district, the decree rendered thereon, declaring said district to have been duly and legally organized, is conclusive against any attack for fraud or illegality in any of the proceedings for such organization.

3. SUIT AGAINST IRRIGATION DISTRICT — VALIDITY OF ORGANIZATION — LIMITATION.
   A suit in equity, so far as it seeks relief on the ground of fraud or illegality in proceedings for the organization of an irrigation district, is barred if brought two years after the order is made by the board of county supervisors declaring the district duly organized, under Act Cal. March 7, 1887, § 3, as amended by Act March 20, 1891.

4. INJUNCTION—IRRIGATION DISTRICT—TAX DEED—ACCRUAL OF CAUSE OF ACTION.
   The right to enjoin the directors of an irrigation district from taking a deed to complainant's land bought in under tax sale, and from making future assessments, accrues with the threatened making of the deed and levy of assessment, and not with the issuance and sale of the bonds, for the payment of which such sale was made and such assessments are threatened.

Works & Lee, for complainant.

L. L. Boone and O. A. Trippet, for Ætna Iron & Steel Co.

C. C. Wright, for Erskine, Lacy, and others.

WELLBORN, District Judge. This is a suit for a decree declaring illegal and void the proceedings for the organization of the Perris irrigation district, canceling the bonds issued by said district, and enjoin-

ing the board of directors of said district from taking a deed to the property of complainant, heretofore sold for taxes, and also perpetually enjoining any further taxes or assessments on complainant's land by said district or its officers. The bill, which was filed July 20, 1897, challenges the corporate existence of said district, and also the validity of the proceedings subsequent thereto for the issuance and sale of bonds.

Among the allegations of the bill which relate to the former ground of relief, namely, the alleged invalidity of the proceedings for the organization of said district, are the following:

"That the defendant the Perris irrigation district claims to be a corporation organized and existing under and by virtue of the laws of the state of California providing for the organization of irrigation districts in said state, and is, and has been during the times herein mentioned, acting as such corporation." That complainant was at the times mentioned in the bill, and is now, the owner in fee simple of a large tract of land within the boundaries of said district as claimed to exist, which land has been, and will continue to be, subjected to taxation by said alleged district, to meet the current expenses incurred, and the interest and principal of the bonds issued, by said district; and that said bonds are, and will continue to be, a cloud upon complainant's title to said lands, unless the relief which complainant prays for is granted him. That said alleged district is not such in fact, and never has been, but the proceedings for its organization are and were wholly void and inoperative, because the petition for its organization was not signed by either 50, or a majority, of the freeholders within said district as proposed, nor was any notice ever given of the time and place when and where said petition would be presented. That a petition was presented to the board of supervisors of the county wherein said district was proposed to be organized, to which were appended 55 names, purporting to be names of freeholders in said proposed district; but that 2 of the freeholders within said proposed district, knowing that a sufficient number of qualified signers could not be obtained to said petition as required by law, fraudulently and in violation of law executed to various persons deeds of conveyance for small tracts of land within said proposed district, upon the agreement and understanding that the said parties should accept said deeds, and thereafter sign said petition, and that they should, after said district was organized, reconvey said real estate to the parties executing said conveyances. That deeds were thus executed to 42 persons for the sole and fraudulent purpose of making it appear that they were qualified to sign said petition, and that said persons did sign said petition, and afterwards reconveyed said lands to their grantors, and that, excluding these fraudulent signers, said petition was not signed by 50, nor a majority, of the freeholders within said proposed district. That, pursuant to the statutes of the state of California, said alleged district, purporting to act through its board of directors, petitioned for and obtained orders or decrees, in the superior courts of the counties of San Diego and San Bernardino, in said state, declaring said district to have been duly and legally organized as such; but the persons by whom said proceedings for confirmation were instituted and carried on were not the directors of said, or any, district, or authorized to institute or carry on said proceedings, and that said pretended district was never organized, and did not exist as such, and no proceedings had in its name could be effective. That said persons who assumed to act as directors of said district had full knowledge of the fraudulent character of the petition, as alleged, and that the orders confirming the organization of said district were procured by the fraudulent concealment, on the part of said persons, in said pretended district, of the true facts with respect thereto, and by the fraudulent allegation and representation that said petitioners, who fraudulently signed said petition, were bona fide and competent signers thereof, and that, but for said concealment and fraud, said orders of confirmation would never have been given.

Among the allegations of the bill which relate to the issuance and sale of bonds are these:

That, by the laws of the state of California, irrigation districts organized thereunder may, for the purpose of acquiring water and water rights, and constructing waterworks, issue and dispose of bonds, as provided therein. That, before issuing any bonds, or calling an election therefor, the board of directors of the district are required by law to estimate and determine the amount of money necessary to be raised. That said district has issued and disposed of bonds, purporting to be the bonds of said district, in the aggregate amount of $442,000, in denominations of $500 each. That no estimate or determination of the amount of money necessary to be raised by issuing bonds was ever made or had by said pretended district before issuing said bonds. That said bonds, with certain exceptions specifically set forth, were not sold for cash, upon bids called for, as provided by law, nor in exchange for property, as provided by the statute, but were exchanged and bartered away to various persons, in various amounts, for labor, salaries of officers, employés, and attorneys, and for material used in the construction of the works of said pretended district, for less than their face value and in direct violation of law. Among the bonds so issued were 50, dated August 11, 1893, for $25,000; 27, dated August 17, 1893, for $13,500; 24, dated October 17, 1893, for $3,000; 33, dated May 3, 1893, for $19,500; and 42, dated June 7, 1893, for $21,000,—all issued to the Lacy Manufacturing Company; 12 dated January 4, 1893, for $5,400; 18, dated January 13, 1893, for $9,000; and 17, dated May 26, 1893, for $7,650,—to the Ætna Iron & Steel Company; the consideration of all of said bonds being labor and material used in construction of system. That the board of directors of said district have sold the lands of complainant for taxes levied by said district, and caused the same to be bought in by said district, and are about to, and will, if not enjoined, take a deed for said lands, continue to levy assessments against the lands of complainant, and enforce the collection thereof; and, if they should fail to do so, the board of supervisors of the county in which said district is situated is authorized by the laws of the state of California to levy such assessments; and, if said board should fail to levy the same, the owners and holders of said bonds are authorized by the laws of said state to compel the levy of such assessment and the collection of the taxes necessary to pay the interest and principal of said bonds, if valid. That the holders of said bonds, or a part of them, claim that the same are negotiable instruments, and that they are innocent purchasers and holders thereof, and that the lands of complainant are bound for the payment of said bonds, whether valid or not. That said bonds are a cloud upon complainant's title to said land, and destroy the sale thereof, and render the same worthless, to complainant's damage in the sum of $3,000, and that he has no speedy or adequate remedy in a court of law for the injury thus resulting to him.

The bill also sets out those provisions of the statute of the state of California, approved March 7, 1887, known as the "Wright Act," which, it is claimed, were not complied with in the organization of the district, as follows:

"Section 1. Whenever fifty or a majority of freeholders owning lands susceptible of one mode of irrigation from a common source, and by the same system of works, desire to provide for the irrigation of the same, they may propose the organization of an irrigation district under the provisions of this act, and when so organized such districts shall have the powers conferred, or that may hereafter be conferred, by law upon such irrigation districts.

"Sec. 2. A petition shall first be presented to the board of supervisors of the county in which the lands, or the greatest portion thereof, is situated, signed by the required number of freeholders of such proposed district. * * * Such petition shall be presented at a regular meeting of said board and shall be published for at least two weeks before the time at which the same is to be presented, in some newspaper printed and published in the county where said petition is presented. together with a notice stating the time of the meeting at which the same will be presented."

The bill also sets forth certain other provisions of said act, which, it is claimed, were violated in the issuance and sale of said bonds, as follows:

"Sec. 16. The board may sell said bonds from time to time, in such quantities as may be necessary and most advantageous, to raise money for the construction of said canals and works, the acquisition of said property and rights, and otherwise to fully carry out the objects and purposes of this act. Before making any sale the board shall, at a meeting, by resolution, declare its intention to sell a specified amount of the bonds, and the day and hour and place of such sale, and shall cause such resolution to be entered in the minutes, and notice of the sale to be given, by publication thereof at least twenty days, in a daily newspaper published in each of the cities of San Francisco, Sacramento, and Los Angeles, and in any other newspaper, at their discretion. The notice shall state that sealed proposals will be received by the board at their office, for the purchase of the bonds, till the day and hour named in the resolution. At the time appointed the board shall open the proposals, and award the purchase of the bonds to the highest responsible bidder, and may reject all bids; but said board shall in no event sell any of the said bonds for less than ninety per cent. of the face value thereof. * * *"

"Sec. 12. The board and its agents and employés shall have the right to enter upon any land in the district to make surveys, and may locate the line for any canal or canals, and the necessary branches for the same, on any of said lands which may be deemed best for such location. Said board shall also have the right to acquire, either by purchase or condemnation, all lands and waters and water rights, and other property necessary for the construction, use, supply, maintenance, repair, and improvements of said canal or canals and works, including canals and works constructed and being constructed by private owners, lands for reservoirs, for the storage of needful waters, and all necessary appurtenances. In case of purchase, the bonds of the district, hereinafter provided for, may be used at their par value in payment. * * *"

"Sec. 37. The cost and expense of purchasing and acquiring property, and constructing the works and improvements herein provided for, shall be wholly paid out of the construction fund."

The prayer of the bill is that this court order notice to be given to all holders of bonds to become parties to this suit, and that the clerk of said court be directed to give such notice, requiring all owners and claimants of the bonds aforesaid to appear and make defense therein, and that, upon coming in, they be made parties hereto; that it be decreed by this court that the proceedings for the organization of said pretended district, and the issuance and sale of its said bonds, be declared illegal and void, and that such bonds be canceled and declared invalid; that the alleged directors of said pretended district, and the said bondholders, and each of them, be perpetually enjoined from levying, or causing to be levied, any assessment upon complainant's land, or the enforcement of the collection of any taxes thereon or therefrom; and that complainant have such other or further relief as may be equitable and just.

The statute of California referred to in said bill, pursuant to which the decrees of confirmation therein mentioned were obtained, is an act of the legislature of March 16, 1889, supplementary to the act of 1887, and known as the "Confirmation Act," which, after providing for the filing of a petition by the board of directors of the irrigation district in the superior court of the county in which the lands of the district are situated, and regulating other matters of practice, confers upon the court the following authority:

"Sec. 5. Upon the hearing of such special proceeding, the court shall have power and jurisdiction to examine and determine the legality and validity of, and approve and confirm, each and all of the proceedings for the organization of said district under the provisions of the said act, from and including the petition for the organization of the district, and all other proceedings which may

affect the legality or validity of said bonds, and the order for the sale, and the sale thereof."

One of the holders of the bonds issued by said district, the Ætna Iron & Steel Company, has appeared and interposed a demurrer to the bill. Said demurrer goes to so much of the bill as seeks to annul the proceedings for the organization of the district, and specifies, as grounds of demurrer, that it appears upon the face of said bill that any action for the purpose of setting aside the proceedings for the organization of the district is barred by laches and delay and the statutes of the state of California; and, further, that said district is a de facto corporation, and the validity of its organization cannot be inquired into in any way except by the proper proceeding in the nature of quo warranto, instituted by the state of California; and, further, that the legality of the organization has been approved and confirmed by a court of competent jurisdiction.

The defendants William Lacy, Jr., R. H. Lacy, and Charles E. Erskine, and others, holders of the bonds issued to the Lacy Manufacturing Company, have also appeared, and demurred to a part of the bill, and pleaded to a part. The demurrer of these last-named defendants is to that part of the bill which seeks to annul said bonds for illegality in their sale, and the grounds of demurrer are that said cause of action is barred by section 338 and also section 343 of the Code of Civil Procedure of California, while the plea of said defendants relates to that part of the bill attacking the validity of the organization of said irrigation district, and sets up in bar of the action said sections 338 and 343, and also section 3 of the act of March 7, 1887, as amended by an act approved March 20, 1891, which section is as follows:

"Such election shall be conducted as nearly as practicable in accordance with the general laws of the state: provided that no particular form of ballot shall be required. The board of supervisors shall meet on the second Monday next succeeding such election, and proceed to canvass the votes cast thereat, and if upon such canvass it appear that at least two-thirds of all the votes cast are 'Irrigation District—Yes,' the said board shall, by an order entered on its minutes, declare such territory duly organized as an irrigation district, under the name and style theretofore designated, and shall declare the persons receiving, respectively, the highest number of votes for such several offices to be duly elected to such offices. And no action shall be commenced or maintained, or defense made affecting the validity of the organization, unless the same shall have been commenced or made within two years after the making and entering of such order." St. 1891, p. 142.

The present hearing is on said demurrers and plea, and the questions presented are: (1) Can the validity of the organization of the Perris irrigation district be called in question in this suit? (2) Are the orders or decrees of the superior courts of San Bernardino county and San Diego county, approving and confirming the proceedings for the organization of said district, conclusive as to its corporate existence? (3) Is the present suit, so far as it seeks relief on the ground of illegality in the organization of said district, barred by section 3 of the act of March 7, 1887, as amended by the act of March 20, 1891? (4) Is said suit, or any part of it, barred by sections 338 and 343 of said Code of Civil Procedure of California?

1. With reference to the first of the above questions, the law has been thus stated:

"Where a municipal corporation is acting under color of law, and its existence is not questioned by the state, it cannot be collaterally drawn in question by private parties; and the rule is not different although the constitution may prescribe the manner of incorporation." 1 Dill. Mun. Corp. (4th Ed.) § 43a.

Again, it has been said:

"The state, which alone can incorporate, may waive the breach or acquiesce in the usurpation, and the wrong being to the state, and not to the individuals, so long as the state remains inactive the individuals must also acquiesce." 4 Am. & Eng. Enc. Law (1st Ed.) p. 198, note 4.

See, also, State v. Leatherman, 38 Ark. 81.

As to private corporations, the rule above stated has been often applied by the supreme court of California (Rondell v. Fay, 32 Cal. 354; Spring Valley Water Works v. San Francisco, 22 Cal. 441; Ditch Co. v. Crane, 80 Cal. 181, 22 Pac. 76; Association v. Chester, 55 Cal. 101), and is now a statutory enactment (Civ. Code Cal. § 358). The supreme court of California has also repeatedly declared the same rule applicable to public corporations. Dean v. Davis, 51 Cal. 406; Reclamation Dist. v. Gray, 95 Cal. 601, 30 Pac. 779; Swamp Land Dist. v. Silver, 98 Cal. 51, 32 Pac. 866; Hamilton v. County of San Diego, 108 Cal. 273, 41 Pac. 305; Quint v. Hoffman, 103 Cal. 506, 37 Pac. 514.

In Dean v. Davis, supra, the court says:

"But the plaintiff contends that levee district No. 5 was not organized as a corporation, for the reason that the board of supervisors never acquired jurisdiction of the proceeding, and that the order of the board creating the district was therefore void. It appears, however, on the face of the complaint, that the petition presented to the board for the organization of the district was good in form, and on its face was a compliance with the statute. Nor is it claimed that the order creating the district was void on its face. The complaint, therefore, states a case in which the proceedings for the organization of the corporation were apparently valid, and in which the corporation is transacting business as such. But it seeks to impeach the validity of the proceedings by proof aliunde. It avers that the petition presented to the board was untrue in fact, in an essential particular, and was known to be so, both to the petitioners and the board, and that, in that respect, the petition was false and fraudulent. But it is well settled that if a company has 'in form a charter authorizing it to act as a body corporate, and was in fact in the exercise of corporate powers at the time of its dealings with the plaintiff, then it was, as to them and all third persons, a corporation de facto, and the validity of its corporate existence can only be tested by proceedings in behalf of the people,' nor can it be shown in a collateral action that the charter was procured through fraud. Jones v. Dana, 24 Barb. 395. To the same effect are McFarlan v. Insurance Co., 4 Denio, 392; Doyle v. Petroleum Co., 44 Barb. 239; Railroad Co. v. Cary, 26 N. Y. 75; Wight v. Railroad Co., 16 B. Mon. 4; Ang. & A. Corp. §§ 635, 636. It is, therefore, not competent for the plaintiff to attack the validity of the corporation in this form of action."

The case of Quint v. Hoffman, supra, is especially applicable here, because the rule in question was applied to an irrigation district, organized under the Wright act, in a suit by a freeholder of the district to enjoin the district from selling any of the lands of the plaintiff for assessments levied by said district. In the last-named case, the court says:

"The organization of the Central irrigation district is assailed, and it is insisted that the validity of that organization may be attacked collaterally in this proceeding, by showing that the board of supervisors acted without their jurisdiction in effecting its organization. This position cannot be maintained. An irrigation district of this character is a public corporation, formed under a gen-

eral law, and its object is the promotion of the general welfare. People v. Irrigation Dist., 98 Cal. 206, 32 Pac. 1047, and cases there cited. Corporations organized under the act of the legislature popularly known as the 'Wright Act' being public corporations, it is immaterial whether they be corporations de jure or de facto. That is a matter which cannot be inquired into upon a collateral attack; and in a case like the present, where the validity of an assessment levied by such a corporation is the subject of litigation, the validity of such assessment does in no way rest upon the fact of the de jure character of the corporation. This principle must be considered settled law in this state. Dean v. Davis, 51 Cal. 411; Reclamation Dist. v. Gray, 95 Cal. 601, 30 Pac. 779; Swamp Land Dist. v. Silver, 98 Cal. 53, 32 Pac. 866. If appellant's contention goes to the extent that this corporation is not even a corporation de facto, the allegations of the complaint are not sufficient to support such contention."

Complainant contends that the proceedings for the organization of the Perris irrigation district are wholly void, for the reason that no notice was ever given of the petition presented to the board of supervisors, and, therefore, the existence of the district may be attacked by private persons; citing Norton v. Shelby Co., 118 U. S. 426, 6 Sup. Ct. 1121, and People v. Toal, 85 Cal. 333, 24 Pac. 603. I do not understand, however, that, in applying the rule that the existence of a de facto corporation can be questioned only at the suit of the state which created it, there is any room or place for the distinction sometimes observed between things that are void and things that are voidable. The rule, sustained by the overwhelming current of authorities, and based on considerations of public policy, is that, where a reputed corporation is acting under forms of law, unchallenged by the state, the validity of its organization cannot be drawn in question by private parties. Corporate franchises are grants of sovereignty only, and, if the state acquiesces in their usurpation, individuals will not be heard to complain. Neither the nature nor extent of an illegality in its organization can affect the existence of a reputed corporation, if the requisites just stated are present; that is, if such corporation be acting under color of law, and the state makes no complaint. Where these requisites concur, there is a de facto corporation. Such corporation may legally perform every act which the same entity could perform, were it a corporation de jure. People v. La Rue, 67 Cal. 526, 8 Pac. 84.

People v. Toal, supra, one of the cases relied on by complainant does not antagonize the rule above stated. If, however, it were so construed, it could not prevail as an authority against the great number of cases in California upholding the rule.

Norton v. Shelby Co., supra, the other case cited by complainant, was carefully reviewed by the circuit court of appeals, Sixth circuit, and the court declared as follows:

"But it is needless to multiply authorities. They are substantially, if not altogether, agreed upon the proposition that when a municipal body has assumed under color of authority, and exercised for any considerable period of time, with the consent of the state, the powers of a public corporation of a kind recognized by the organic law, neither the corporation nor any private party can, in private litigation, question the legality of its existence."

Further on in the opinion, the court says:

"Much reliance was placed in argument upon the case of Norton v. Shelby Co., 118 U. S. 426, 6 Sup. Ct. 1121, as supporting the application of the rule invoked to the present case. But an examination will show that it does not declare or indicate anything inconsistent with the views above stated. It was an action

against the county upon certain bonds which had been issued in its name by a board of county commissioners. This board had been created by a special act of the legislature of Tennessee, and empowered to execute the duties which, by the constitution of the state, were devolved upon the county court, composed of the justices of the peace of the county. Within a month after its passage the justices of the peace assailed the validity of the act by filing a bill in their official character, in the name of the state, against the commissioners, charging them with unlawful usurpation of the power of the justices, and praying that they should be enjoined. The case went to the supreme court of the state, where it was held that the act was void. This was in conformity with a decision which had already been made by that court in another case of the same kind from the same county. The board of commissioners was an anomaly in its system of administration of county affairs. For the plaintiff it was contended, in the case of Norton v. Shelby Co., that, although the commissioners did not hold their offices de jure, they were nevertheless officers de facto, and, being such, their acts were valid. The supreme court held otherwise, upon the ground that the commissioners could not be incumbents of an office which could not exist. They could not fill a place which was unknown to the constitution of the state, and which was made in the room of a board expressly authorized by that instrument to discharge the duties of the same office. And the court took pains to distinguish such a case by saying, at page 441, 118 U. S., and at page 1125, 6 Sup. Ct.: 'The doctrine which gives validity to acts of officers de facto, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy, and necessity for the protection of the public and individuals whose interests may be affected thereby. Officers are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidences of such officers, and in apparent possession of their powers and functions. For the good and peace of society, their authority is to be respected and obeyed until, in some regular mode prescribed by law, their title is investigated and determined. It is manifest that endless confusion would result if, in every proceeding before such officers, their title could be called in question. But the idea of an officer implies the existence of an office which he holds.' And the court distinguishes the case of State v. Carroll [38 Conn. 449] supra, which is cited with apparent approbation, by the test which it had indicated, and by pointing out that in that case there was an office to fill. Similar reasons and the like rule apply in the case of officers as to that of municipal corporations de facto. Clement v. Everest [29 Mich. 19]." Ashley v. Board of Supervisors, 8 C. C. A. 465, 60 Fed. 63.

It should be further observed, with reference to Norton v. Shelby Co., supra, that the court, in that case, was dealing with the laws of the state of Tennessee, and the conclusions reached were in harmony with the previous decisions of the supreme court of that state, whereas, in California, as I have already shown, the overwhelming current of precedents is to the effect that there may, in that state, be a de facto corporation, and that the existence of such corporation cannot be collaterally attacked. The organization by a state of its domestic corporations is matter of local policy, and upon questions relating solely thereto the federal courts follow the decisions of the state court of last resort. Tregea v. Board, 164 U. S. 179, 17 Sup. Ct. 52. Both upon reason and authority, I hold that the validity of the organization of the Perris irrigation district, as the same is disclosed by the bill, cannot be called in question in this suit.

2. I am further satisfied that, if the corporate existence of said district were open to complainant's attack, the decrees of the superior courts of San Bernardino county and San Diego county, approving the organization of said district, are conclusive against such attack. This question has been so often and expressly decided by the supreme court of the state of California that it cannot now be considered an

open question. Crall v. Board, 87 Cal. 140, 26 Pac. 797; Board v. Tregea, 88 Cal. 334, 26 Pac. 237; Irrigation Dist. v. Brandon, 103 Cal. 384, 37 Pac. 484; In re Central Irrigation Dist., 117 Cal. 382, 49 Pac. 354; Board v. Abila, 106 Cal. 355, 39 Pac. 794. These decisions of the state court are binding upon the federal courts. Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56; Tregea v. Board, 164 U. S. 179, 17 Sup. Ct. 52; Louisiana v. Pilsbury, 105 U. S. 278; Christy v. Pridgeon, 4 Wall. 196. Among the issues upon which the court passes in confirmation proceedings are the very ones presented by complainant in his bill, namely, whether or not the requisite number of bona fide freeholders signed the petition to the board of supervisors, and also whether or not due notice of such petition was given. These issues the court must necessarily find in the affirmative before any order of confirmation will be reached; and it will be seen that, in some of the cases above cited, these two questions were the identical questions passed upon by the court. If the final order or decree in a proceeding for confirmation were res adjudicata, there would be an estoppel by judgment against litigating again the issues so adjudicated. Considering, however, such a proceeding but one to secure evidence, as held in Tregea v. Board, supra, still, since, the evidence so secured, the final decree or order, is conclusive, it must prevail whenever offered. In other words, the ultimate effect of an order of confirmation is the same, whether it operates as an estoppel by judgment, or as conclusive evidence. It is decisive of the legality of the existence of the district. The alleged frauds, set out in the bill, in the procurement of signers to the petition, which was presented to the board of supervisors, are not such as will, in a suit of this sort, sustain an attack on the order or decree of confirmation. As already stated, one of the issues before the court, in the proceedings for confirmation, was whether or not the petition presented to the board of supervisors was signed by the requisite number of bona fide freeholders, and it is well settled that:

"The frauds for which a bill in chancery will be sustained to set aside a judgment or decree between the same parties rendered by a court of competent jurisdiction are frauds extrinsic or collateral to the matter tried by the first court, and not a fraud which was in issue in that suit." U. S. v. Throckmorton, 98 U. S. 61; Pico v. Cohn, 91 Cal. 129, 25 Pac. 970, and 27 Pac. 537; Zellerbach v. Allenberg, 99 Cal. 57, 33 Pac. 786; Allen v. Currey, 41 Cal. 318; In re Griffith, 84 Cal. 113, 23 Pac. 528, and 24 Pac. 381.

In U. S. v. Throckmorton, supra, after referring to numerous precedents, and quoting from a Massachusetts case as follows: "The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible. The party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted,"—the court proceeds:

"We think these decisions establish the doctrine on which we decide the present case, namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which

the decree was rendered. That the mischief of retrying every case in which the judgment or decree was rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

The case of Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, cited by complainant, does not conflict with the rule enunciated in U. S. v. Throckmorton, supra, but was merely an application of said rule to the facts then before the court. Among the frauds enumerated in U. S. v. Throckmorton, supra, which authorize the annulment of a judgment, is "where the attorney, regularly employed, corruptly sells out his client's interest to the other side." In Arrowsmith v. Gleason, supra, the guardian of a minor ward entered into collusion with another person, whereby a corrupt sale of the real estate of the ward was confirmed in probate, and it was merely held, in a suit afterwards brought by the ward, that this was such a fraud as called for appropriate equitable relief against the confirmation of the guardian's sale. That this is a correct view of the decision in Arrowsmith v. Gleason, supra, is confirmed by one of the citations in the opinion, namely, Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, where the court says:

"Had the question of fraud been before the probate court in any of these proceedings, and had the complainant been apprised of them, the case might have been different. This court would not try over again a case already tried, nor permit the complainant to litigate matters which he had notice of, and which he had an opportunity to litigate in the probate proceedings. But one of the grounds of complaint made by the bill is that the very attorneys whom he had employed to secure his claim acted as attorneys for the succession and heirs, and conducted the proceedings for the sale, and participated as active parties therein, without giving him any notice of what was being done."

3. The plea of Erskine and others shows that the suit, so far as it assails the organization of said district, is barred by section 3 of the act of March 7, 1887, as amended by the act of March 20, 1891; and I am inclined to think that the demurrer of the Ætna Iron & Steel Company on that ground is also well taken. It is true the bill does not allege precisely or expressly the date of the order of the board of supervisors declaring the territory within said district duly organized as an irrigation district. The bill, however, does allege that the bonds of the district were sold, some as early as 1891, and others as late as the year 1894. It is a fair, if not necessary, inference, from these and other allegations of the bill, that said order, alleged to be illegal and void, was made and entered prior to the sale of the bonds. Indeed, such is, in part, the theory of complainant's case, and thus it appears that a much longer time than two years has elapsed since the making and entering of said order. When the bar of the statute of limitations appears upon the face of the bill, the statute, or objections in analogy to it, upon the ground of laches, may be taken advantage of by demurrer, as well as by plea. Busw. Lim. § 383.

4. The suit is not barred either by section 338 or 343 of the Code of Civil Procedure of California. The bill prays, among other things, for injunction against the taking, by the board of directors of said

district, of a deed of complainant's land, bought in by said district under a tax sale, and also against future assessments. The causes of action, or grounds of equitable relief, to which said prayer relates, accrued, not with the issuance or sale of the bonds, but with the threatened making of the deed and levy of assessment. If taxes or assessments should be hereafter levied or threatened periodically, causes of action would accrue as often as these contingencies occur,—assuming, of course, the taxes or assessments to be illegal; but, as I have already ruled, such causes of action, so far as they affect or concern the validity of the organization of the district, would be barred, under section 3 of the act of March 7, 1887, as amended by the act of March 20, 1891, without reference to the dates of their accrual, by the lapse of two years from the making and entering of the order organizing the district.

The demurrer of the Ætna Iron & Steel Company will be allowed. The demurrer of Erskine, Lacy, and others is overruled, and said defendants assigned to answer, at the next rule day, so much of the bill as is covered by said demurrer. That part of the plea of said last-named defendants which relates to the organization of said district is allowed, but that part of said plea which relates to the proceedings had for the issuance of said bonds is overruled, and said defendants assigned to answer so much of the bill as is covered by the overruled part of said plea at the next rule day.