### MILLER v. PERRIS IRRIGATION DIST. et al.

(Circuit Court, S. D. California. February 20, 1899.)

#### No. 752.

1. IRRIGATION BONDS—BILL TO CANCEL—SUFFICIENCY OF ALLEGATIONS.

Allegations in a bill to cancel bonds of an irrigation district, which could not legally be issued for labor, though they might have been in payment for materials, that they were issued for labor and materials, sufficiently show the invalidity of the bonds, as against a general demurrer, without specifying to what extent either labor or materials entered into the consideration.

2. IRRIGATION DISTRICT—VALIDITY OF ORGANIZATION—WHO MAY ATTACK.

Where a reputed irrigation district is acting under forms of law, unchallenged by the state, the validity of its organization cannot be attacked, either directly or collaterally, by a private individual.

3. SAME—SUIT FOR CANCELLATION OF VOID BONDS—RETURN OF CONSIDERATION.

In a suit by a landowner of an irrigation district against the district and its bondholders, to restrain the levy and collection of assessments for the payment of void bonds issued by the district, and for the cancellation of such bonds, the complainant is not required to allege or tender the restoration of the consideration received by the district therefor, which restoration would be beyond his power. While the court, in case of the cancellation of the bonds, might order the consideration restored by the district in a proper case, it is incumbent on the bondholders, if they desire such relief, to allege and prove the facts which entitle them to it.

In Equity.

Works & Lee, for complainant.

C. C. Wright, for defendants.

WELLBORN, District Judge. Suit, by an owner of certain lands in said district, for the cancellation of bonds issued by the district, and to enjoin the enforcement of any assessment against said lands for the payment of said bonds. The present submission is on a general demurrer to an amended bill. After said demurrer was submitted, and upon examination of the briefs filed pursuant to said submission, the court made an order allowing supplemental briefs, all of which have come in, and, although my conclusions on two of the questions raised in the original briefs were announced orally, when the above-mentioned order was made, I shall in this opinion review those questions, as well as the one discussed in the supplemental briefs.

The allegations of the amended bill, except as below indicated, are the same as the allegations of the original bill, for which see my opin-

ion, on demurrer to said original bill, reported in 85 Fed. 693. The only differences between the original and amended bills are that the latter omits certain references, contained in the former, to decrees of confirmation had in San Bernardino and San Diego counties, and also omits that part of the prayer of the original bill for a decree declaring illegal and void the organization of the district.

The objections urged to the amended bill are—First, that said bill fails to show that the bonds in dispute were issued contrary to law; second, that the bill shows that the defendants are bona fide purchasers, for value and without notice, and therefore the bonds in their hands are not open to the objections which complainant urges against them; third, that the bill shows that said district received valuable consideration for the bonds issued, but fails to show that such consideration has been restored or offered to the holders of the bonds.

These objections will be disposed of in the order of their statement.

1. The allegations of the amended bill material to the first objection are, substantially, that the bonds were issued for labor performed and materials furnished in the construction of the system of waterworks belonging to the district. Defendants concede that the bonds could not have been lawfully issued for labor, but contend that they could have been so issued for material, and that the bill is fatally defective in not showing to what extent labor, and to what extent material, entered into the consideration for which the bonds were issued. This argument, it seems to me, is unsound. If a bond could not be legally issued for labor, but was, in fact, issued for labor and material jointly, it follows, in the absence of any showing as to how far labor and material, respectively, entered into the consideration, that the issuance was unlawful. Possibly that part of the bill which alleges unlawful issuance would, under proper objections, be held deficient in certainty. No special demurrer, however, has been interposed to that or any part of the bill, and I am of the opinion that the defect, if it be such, cannot be reached by a general demurrer to the whole bill.

2. It is unnecessary now to discuss the rights of innocent purchasers of the bonds of an irrigation district, for the reason that the amended bill does not show the defendants to be such purchasers. On the contrary, said bill, at lines 15 to 19, inclusive, on page 12, alleges "that each and all of the defendants took and now hold such of said bonds as are owned or claimed by them with full knowledge of the facts herein alleged, and that said bonds were each and all illegal."

3. To the third objection to his amended bill complainant makes several answers. He contends, in the first place, that said bill does not allege that the irrigation district received valuable consideration for its bonds. This contention, I think, cannot be maintained. The amended bill, at lines 10 to 17, inclusive, on page 8, alleges as follows:

"That said bonds were not sold for cash upon bids called for as provided by law, nor exchanged for property as provided by the statute, except as to the bonds sold to the Perris Valley Bank, as hereinafter shown, but were exchanged and bartered away to various persons, in different amounts, for labor, salaries of officers, employés, and attorneys, and for material used in the

construction of the works of said pretended district, for less than their face value, and in direct violation of law."

The amended bill then proceeds to specify the various bonds that were issued, and the considerations for which they were issued. In most instances the bonds were issued, according to the allegations of the bill, "for labor and material in construction of distributing system." The bill, at lines 27 to 32, inclusive, ending with the word "district," on page 12, further alleges "that, as to the bonds issued to the defendants the Lacy Manufacturing Company and Lung Hum & Co., they were delivered to said parties for work and labor done and materials furnished under contracts for the construction of the ditches, pipe lines, and other works of the said pretended district." The bill, at lines 1 to 7, inclusive, ending with the word "district," on page 13, further shows "that, as to the bonds issued to J. W. Nance, they were ostensibly sold for cash, upon advertisement and bid, but they were in fact fraudulently delivered to said Nance without any cash being paid therefor, and with the understanding that they should be, and they were, delivered to the defendant the Silver Gate Manufacturing Company for work done and materials furnished in the construction of the water system of said pretended district."

These allegations, I think, even without any reference to the rule that a pleading is to be taken most strongly against the pleader, fairly show that the irrigation district has a system of waterworks, and that its bonds were issued in part for labor performed and material used in the construction of said system. In view of these allegations, I can but conclude that the amended bill does show that the district received valuable consideration for said bonds.

Complainant contends, in the next place, that said bill shows that the irrigation district was not lawfully organized, and therefore there was never in existence any corporation whose duties or responsibilities could attach to the complainant. This contention raises the question of the materiality or relevancy of those parts of the amended bill which set up fraud and illegality in the organization of the district. In my former opinion, already cited, on demurrer to the original bill, I held, after a careful examination of pertinent authorities, that where individuals have organized themselves as a corporation, and are acting as such, under forms of law, the legality of their organization cannot be challenged, either directly or collaterally, at the suit of a private individual. The allegations of the original bill, assailing the organization of the Perris Irrigation District, are repeated in the amended bill, as constituting one of the grounds for the relief sought, namely, a decree restraining the enforcement of assessments against complainant's property, and canceling the bonds issued by said district. Said allegations, although not a direct, are a collateral, attack on the corporate existence of the district. Voss v. School Dist., 18 Kan. 467. That such an attack cannot be made was decided in my former opinion herein. See 85 Fed. 693, already cited. Norton v. Shelby Co., 118 U. S. 426, 6 Sup. Ct. 1121, which I then commented on, and have since carefully re-examined, does not antagonize the conclusion reached in said opinion. That case simply declares, in substance, that a person cannot be a de facto officer when, under the law, there can be no such

office as the one which said person claims to hold.    This doctrine is unquestioned, and, following its analogy, I concede that if, under the laws of California, there could be no such thing as an irrigation district, individuals, by claiming to act as such, could not thereby create a de facto corporation, for the obvious reason that they would not be acting under "forms of law" or "color of law."    I repeat here what was said by me in the opinion above mentioned:

"The rule, sustained by the overwhelming current of authorities, and based on considerations of public policy, is that where a reputed corporation is acting under forms of law, unchallenged by the state, the validity of its organization cannot be drawn in question by private parties.    Corporate franchises are grants of sovereignty only, and, if the state acquiesces in' their usurpation, individuals will not be heard to complain.    Neither the nature nor the extent of an illegality in its organization can affect the existence of a reputed corporation, if the requisites just stated are present; that is, if such corporation be acting under color of law, and the state makes no complaint. Where these requisites concur, there is a de facto corporation."

Complainant, in his last brief, cites on this point, in addition to Norton v. Shelby Co., supra, Beach, Pub. Corp. § 890.    The first sentence of said section is as follows:

"When the attempted organization of a municipality is void, such a body may plead the invalidity of its organization in defense to a suit brought on its bonds, since it has no power to issue them."

The cases cited by the author, in support of his text, are Ruohs v. Town of Athens (Tenn. Sup.) 18 S. W. 400, and Norton v. Shelby Co., supra.    The former of these cases depended upon local statutes of Tennessee, and the doctrine there applied, the court itself concedes, does not prevail in some other localities, and, as shown in my former opinion herein, is notably different from the law of California.    Norton v. Shelby Co., supra, is referred to by the writer above mentioned, in another part of his work, as follows:

"Incumbent of an Unconstitutional Office.    It is no impeachment of the acts of an officer, who is otherwise de facto, that his appointment or election is unconstitutional; as, for instance, where he is appointed in violation of a constitution providing for his election.    But, where no office legally exists, there can be no de facto officer.    This qualification of the rule was declared in an elaborate opinion by Mr. Justice Field, of the supreme court of the United States, and an unconstitutional act creating an office 'is, in legal contemplation, as inoperative as though it had never been passed.'    And the same rule is applied when an office is abolished by statute; thenceforth there can be no de facto incumbent."    Beach, Pub. Corp. § 184.

This last quotation from Beach on Public Corporations interprets the opinion of Justice Field in Norton v. Shelby Co., conformably to the views which I have already expressed, and, if the first extract quoted above from that work be limited by said opinion thus interpreted, or, more accurately, if the municipality referred to in said extract be such a one as could not possibly have a legal or de jure existence, the extract, thus qualified, applies in California, and, doubtless, in the other states of the Union.    If, however, said quotation be broadly interpreted, so as to include the doctrine in Ruohs v. Town of Athens, supra, then, while it seems to be the law of Tennessee, it is not the law of California.    I am fully satisfied that the Perris Irrigation District must be deemed, in this suit, a legally

existing corporation, and that all of the allegations of the amended bill, which charge illegalities in, or assail the organization of, said district, are irrelevant.

Complainant further contends that, in a suit by a landowner of an irrigation district against the district and its bondholders to restrain the levy and collection of assessments for the payment of void bonds issued by the district, and to cancel said bonds, it is not necessary to allege or tender restoration of the consideration for which the bonds were issued. While the bill in the present suit prays for cancellation of the bonds, as well as an injunction against assessments upon complainant's property for their payment, yet, if the facts alleged entitle the complainant to the latter relief, whatever may be said of the former, the bill, of course, is good against a general demurrer.

Complainant has cited a large number of cases to show that the bonds in question were issued without authority of law and are void. It is unnecessary, however, at this time, to review said cases. The amended bill, as I have already ruled, shows that the bonds were issued for a purpose which the law prohibits, and that the holders of said bonds are not innocent purchasers; therefore said illegality is available to the complainant, whether it be considered as resulting from a total want of power or from an irregular use of power. The third objection to the amended bill, the one now being considered, concedes, for the purposes of said objection, that the bonds are void; said objection, as I understand it, being that, conceding the bonds to be void, it would be inequitable, even at the instance of a landowner, to cancel them, or enjoin any assessment for their payment, and allow the district to retain the consideration for which they were issued. That a taxpayers' bill, to cancel void bonds of a municipality, need not allege a restoration of the consideration, or even offer to restore the consideration, is shown by an authority on which defendants seem to place much reliance. Crampton v. Zabriskie, 101 U. S. 601. That case "was brought in the court below by the appellees, for the purpose of having certain bonds issued by the board of chosen freeholders of the county of Hudson, N. J., delivered up and canceled, and for the purpose of having the said board reconvey to Crampton, the appellant, certain lands and premises which had been purchased by the board from Crampton, and paid for by the issue of the bonds in question." The trial court granted the relief prayed for, and its decree was affirmed by the appellate court. While that case necessarily implies that, under the circumstances there existing, restoration of the consideration is an equity which the municipality owes to the bondholder, it does not support defendants' contention that such restoration is an equity for which the complaining taxpayer is responsible, and the inclination of my mind is against the contention. To uphold said contention would be practically to deny to the taxpayer any standing in court, for the obvious reason that he has no power himself to restore property held by the district. The taxpayer's right to equitable relief, to the extent, at least, of the protection of his property from sale under illegal assessment, it seems to me, is established when he shows illegality in

the assessment and that the threatened sale would cloud his title. Probably, if it be shown to the court that the district received property or other consideration for its bonds, and that such property or other consideration can be restored, the court, in canceling the bonds or enjoining the assessments, will also direct restoration of the consideration. See 1 Beach, Pub. Corp. § 636; Turner v. Cruzen, 70 Iowa, 207, 30 N. W. 483. This point, however, need not be, nor is it now, decided. All that I do decide in this connection, on the present hearing, is that, conceding the law to be as above suggested, the pleadings and proofs necessary to enforce the equity in question, or to show the impracticability of its enforcement, are not incumbent upon the complaining taxpayer, but the bondholder, if he would have the consideration restored, must allege and prove the facts which entitle him to that relief. Such was the procedure in Turner v. Cruzen, supra. The facts in the last-mentioned case, which the court held entitled the creditor to a return of the property for which the void warrants had been issued, were set forth, not in the complainant's bill, but in the creditor's answer, and the decision was, in effect, that the county, which was not an original party to the suit, should be made a defendant, as prayed in the creditor's answer, in order that the creditor might have restored to him, in that suit, the land and improvements thereon which he had conveyed to the county in exchange for said warrants. In each of the cases mainly relied on by defendants (Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442; Chapman v. County of Douglass, 107 U. S. 348, 2 Sup. Ct. 62; Louisiana v. Wood, 102 U. S. 294; and Willis v. Board, 30 C. C. A. 445, 86 Fed. 872), the controversy was between a municipality and the holders of its securities. Hence the views which I have above expressed are not in conflict with any of said cases. I am of opinion, although the question is not free from difficulty, that complainant herein, by alleging facts which show that the bonds were issued contrary to law, and that the holders of them are not innocent purchasers, and that a sale and conveyance of complainant's property, under an assessment to pay said bonds, would cast a cloud upon his title, has stated a case for equitable relief. Whether that relief includes cancellation of the bonds, or should be specially confined to the protection of complainant's property against illegal assessments, is a question not raised by the present demurrer, but determinable at a later stage of the case.

The demurrer to the amended bill will be overruled, and defendants assigned to answer the same at the next rule day.